Your Honor, this is the second case of the morning called 212-701, Razin v. Stewart, consolidated for our argument of 212-727, Stewart v. Razin, on behalf of the Razins, Mr. Thomas Greenwald, on behalf of the Appellees, excuse me, on behalf of Mr. Stewart and Mr. Thomas Greenwald. I know we have our times set, but I don't know who's going first. I think it's 9-1-1. First, I have 10 minutes on the charge of John Razin's appeal. Actually, I think you have 15? 10, 20, 15 and 5. 10, 20, 15 and 5. Okay. You may proceed. Thank you, Your Honor. Mr. Thomas Greenwald on behalf of John Razin in this appeal and on behalf of Sherry Razin in the other appeal. The John Razin appeal concerns an appeal from a denial of a motion for a new trial on the issue of damages sustained by John Razin for the loss of consortium claim because of the injuries to his wife. The jury returned a verdict awarding zero damages for loss of services past and future and zero damages for loss of the other elements of consortium. And that verdict was affirmed by the trial judge. Our position on this appeal is that the verdict is against the manifest weight of the evidence and that the trial court should have invalidated the verdict and granted a new trial to John Razin on the issue of damages only. This appeal does not involve any appeal on the liability issues. The basis for our claim that the verdict was against the manifest weight of the evidence is threefold. Number one, that the jury eliminated and did not consider and did not award damages as it was required for a proven element of damages. Number two, that the amount of zero damages for both of those items bear no reasonable relationship to the loss sustained. And three, the damages awarded, zero damages, are probably inadequate. In this instance, John Razin has the 18-year husband of Sherry Razin and as shown by the evidence, the clear convincing evidence, enjoyed the fruits of his marriage and enjoyed the services, the tremendous amount of services as testified to not only by himself, not only by his children, but by his wife and by a vocational expert during their marriage and prior to this occurrence. I think the trial court made some comment based on the facts that maybe there was no consortium to lose in this marriage at the time that the accident took place. The trial court's statement was that because there was evidence that Sherry Razin had on two And that was all. Even Mr. Erickson said that was all. There was no relationship or anything. She had written on two occasions and the second occasion was actually the night of the accident in issue. But she told Erickson she wasn't married, correct? Excuse me? She told Erickson she was not married. Yes, she did tell Mr. Erickson the first time, not the second time, the first time that she was not married. That's right, there was a second time. Right. No, no. The second time, again, was an unassociated meeting by chance situation. Okay? This was not a date. In fact, Mr. Erickson that evening had a date with another person. This was a chance meeting in the afternoon of Memorial Day, as alleged by Mr. Erickson. But it was not an arranged meeting. It was not a date. It was just she was with another friend who was going to go riding with the second motorcyclist. And then she chose to ride with Mr. Erickson. But the jury is certainly perfectly free to view that slightly differently, right? I mean, that's your best argument. No, I don't think that evidence was even relevant. But what the trial judge said is that that might show that this marriage was not, exact terms here, that it was not as strong as one might think it to be. But that evidence, as I argued in my brief, is not evidence that is probative of the question of whether or not John Rasm in the 18 years preceding this occurrence was the recipient of services provided by his wife. Maybe they weren't the most loving couple. If one could infer that from riding on a motorcycle on two occasions, I don't believe that that's a reasonable inference. But even if one could, does that inference, is that probative of the argument that he was denied for 18 years the services of his wife? In other words, he never received any services from his wife. And that is completely contrary to the evidence. It's certainly not an inference that can be drawn in light of logic, experience, and accepted assumptions as to human behavior. In fact, if one is to say that just because you participate in some activity with a person of an opposite sex who is not your spouse, and you don't tell that person that I'm married, then that is so contrary to our society. We participate with people not our spouse, same sex, not same sex, in all of our activities, in every activity of life. You see it in sports. You see it in social activities. You see it in belonging to organizations. You see it in just about every phase of life where people interact with people globally, locally, statewide, wherever, and they're not their spouses, but yet they have a very strong marriage. Why do they have a strong marriage? Because the two spouses have a trust between each other. John and Sherry Razin had a very strong trust between each other. But there is no question in this case but that John Razin, not only did he enjoy sexual relations with his wife for 18 years before this accident, not only did he enjoy social relationships with his wife before the accident, but the overwhelming testimony, and there's no testimony contradicting this, for 18 years he was a recipient of a significant number of services provided by his wife. She did most of the yard work. She did the laundry. She did the cleaning. She hauled their child around. All of this is well explained in my brief, and I don't want to restate the facts, but it was uncontradicted that for 18 years, John Razin at least received a great deal of services from his wife. And it's further uncontradicted that after this accident, the horrendous injuries that she had, which were described in the briefs, was denied those services, and continues to be denied those services because of the horrendous injuries that she had. And she had shattered bones in both of her upper extremities. She had five or six shattered ribs. She had a shattered hip. She had a shattered femur. She had broken lower bones of her leg. Her knee was torn apart, her right knee. She had fractures in her left foot. She is not able to spend more than an hour without having to elevate her right leg because of the tremendous injuries to her right lower extremity. She is not able to cut the lawn. She's not able to do the laundry. She can throw the stuff in, but she can't do all of the laundry. She can never do any of the housework. But what she no longer can do is very much set forth in the record. There is no evidence that directly contradicts the loss of those elements of consortium before and or after. The only evidence that is presumed in this over-rejection was that she rode on this motorcycle on two unconnected occasions for short periods of time. That's it. And that is, if it relates to anything, it might relate to the closeness of their loving relationship, but it certainly does not relate to the services and part of being a husband is to receive the services of your wife. And that's an element that the jury was clearly instructed on, and they were to award Mr. Raz of fair and reasonable compensation for that element of damages that he clearly sustained. There's no contradictory evidence to that. He was recipient before and not the recipient after. So at least to that element, and we had them separated. We had those two elements separated in the verdict. It was inappropriate to give him zero amount of damages. The jury in that instance ignored a proven element of damages. My time is up, I believe. It is. Thank you, Counsel. Mr. Goff, you may proceed to respond to John's appeal and then present your appeal. Thank you. May it please the Court, Counsel. I first would like to point out to the Court that should this Court grant the relief that Mr. Zachary Stewart seeks in his appeal, that would make John Rasmussen's appeal moot. And the reason for that is that, obviously, as to Zachary Stewart, if he was not liable for causing the accident, there is no loss of consortium claim against him. And because the co-defendant, Stephen Erickson, has now settled the Rasmussen's claim and the trial court upheld that settlement as being one made in good faith, so it would render this appeal moot. As to the merits of this appeal, I first want to address the standard of review. In this case, it is abuse of discretion. Did the trial court abuse its discretion in denying John Rasmussen's post-trial motion for a new trial? The trial court found that the jury's verdict, awarding no damages, was not against the manifest weight of the evidence. An abuse of discretion standard is the most deferential standard review under the law, with the exception of no review at all, as the Court said in Davis v. Kraft. There are many ways courts have described an abuse of discretion standard. The one I think I like is a ruling with no reasonable basis in the evidence. So in this case, John Rasmussen's asking the Court to find that the jury's verdict of no damages had no reasonable basis in the evidence. I think counsel is arguing that as it relates specifically as to services, that the evidence showed that there were these services that took place before and that they could not take place thereafter. The jury, well, first of all, there is no presumption of injury to the rights of consortium under Illinois law. In my brief, I cited the Seelan v. Wallace case. In that case, the truck driver was killed in a motor vehicle accident. His wife brought suit. As for loss of consortium, the jury awarded her zero damages. The husband in that case was hospitalized in a coma before finally dying. The wife argued on appeal that there could be no more clear situation showing a loss of consortium than in that situation and that no reasonable jury could conclude that there were no damages for loss of consortium. But the appellate court disagreed on the reasoning that the only evidence of loss of consortium was the wife's testimony that the marriage was happy and that evidence was not sufficient to support a claim of loss of consortium. I think more importantly, notwithstanding the plaintiff's testimony in this case, it's up to the jury to draw its own conclusions about the state of the marriage before the accident. The counsel is talking about maybe what happened in the 18 years leading up to the accident, but the jury saw, heard the testimony of John Razum, Sherry Razum, and Stephen Erickson right in that courtroom. They were in the best position to assess what the state of that marriage may have been. And in this case, Sherry Razum had, when she first met Stephen Erickson about a month before the accident, asked for a ride on his motorcycle, told him when he didn't want to give her one. She told him she had cancer. It turned out not to be true. Stephen Erickson said that he then relented, was agreeable to give her a ride, but was still concerned about whether she had a husband that might get mad that she would be riding on his motorcycle. And Sherry Razum told Stephen Erickson about a month before the accident that she was not married. Fast forward then to the day of the accident. They meet up again. This is Memorial Day, a holiday, and the jury heard the evidence that, once again, Sherry Razum asked Stephen Erickson if she could ride on his motorcycle. They met that day at about 1 p.m. They were on that motorcycle or in establishments together, several establishments, until the accident happened at about 9.30 p.m. on the evening of Memorial Day. So in this case, I believe, oh, and Steve Erickson, I'm sorry, John Razum testified that he had no idea where his wife was or what she was doing on Memorial Day and that he had never heard of Steve Erickson. So I believe that the jury could find that it was reasonable that good marital relations do not equate to one spouse being out on Memorial Day on a motorcycle with a complete stranger bar hopping. I think that obviously that was the basis of the jury's awarding no damages and loss of consortium. I believe it's reasonable, and I believe with the abuse of discretion standard, the court was correct in upholding the jury's verdict. Well, in your appeal, the standard is de novo. Absolutely, and I think that's a good segue to talk about my client, Zachary Stewart. Zachary Stewart was sued by Mr. and Mrs. Razum for this auto accident that happened on Memorial Day in 2008. The standard review in that case, in this case, is de novo. The appellate court gets to look at the evidence fresh and a judgment notwithstanding the verdict, which is what we were appealing here. The court knows we went through a six-day trial. The jury returned the verdict finding in favor of Zachary Stewart. And subsequently, the trial court granted post-trial motions of both the plaintiffs and the co-defendant Erickson to enter judgment notwithstanding the verdict. And judgment notwithstanding the verdict is properly entered when all the evidence, when viewed in the light most favorable to the non-moving party, in this case, Zachary Stewart, is so overwhelmingly favors the moving party that no contrary verdict based on that evidence could ever stand. That's the Pedrick standard. In ruling on a motion for judgmental V, the trial court is not to weigh the evidence. The trial court is not to assess the credibility of the witnesses. Instead, the trial court may only consider the evidence and any rational inferences therefrom in the light most favorable to the non-moving party, which is Zachary Stewart in this case. A trial court cannot, has no right to enter judgmental V or substitute its judgment in place of a jury simply because the judge disagrees with it or simply because the jury may have possibly returned a different verdict based on that same evidence. In this case, the trial court, despite stating that this was, that Pedrick was followed, far from it. The trial court in this case did not view the evidence in the light most favorable to Zachary Stewart as is required by Pedrick. And moreover, the trial court in this case usurped the function or the jury's role as prior effect when it found that the verdicts were legally inconsistent and when the trial court changed the verdict to find that the negligence of Zachary Stewart was a proximate cause of the accident. How were they not inconsistent? Pardon me? How were they not inconsistent? Because the evidence, this is a fact-intensive case. You have to examine the evidence to find out whether it so overwhelmingly supported a conclusion that no reasonable jury could make. So look at the evidence. In this case, the trial court misapplied Pedrick in two egregious ways, and it's obvious. First, the trial court didn't consider all of the evidence. It's in the record. The basis for the trial court's decision granting the judge an NOV. The trial court was just focused in, just seized upon one small sliver of evidence in this case, which was Zachary Stewart's testimony that he never saw the Erickson motorcycle. It was dark. It was at night, but he didn't see the headlight of the motorcycle at any time before he had started his term. The trial court had a myopic view of the evidence that is set forth in the rationale in the record as to why he's granted an adjudicative NOV. The trial court simply concluded, without considering all the other evidence in the case, that that had to be a negligent act, which was a proximate cause of the accident. First of all, it was wrong for the trial court to assume that, I'm going to back up a little bit, there was, we had an agreed special verdict form in this case, and two of the questions on the verdict, the first two questions were, one, was Stephen Erickson negligent? Two, was his negligence a proximate cause of the accident? Three, was Zachary Stewart negligent? Four, was Zachary Stewart's negligence a proximate cause of the accident? Five, asked the jury to apportion, if they found both parties negligent and a proximate cause of the accident, apportion the fault between the two defendants. Six was just that I had my verdict form for damages. In this case, the jury did return, well, they found Stephen Erickson negligent, they found his negligence a proximate cause of the accident, they found Zachary Stewart negligent, but they found that Zachary Stewart's negligence was not a proximate cause of the accident, and in question five, they were consistent, the jury was, 100% of the liability was assessed against Stephen Erickson, zero against Zachary Stewart. Now, I think it was wrong for the trial court to assume that the jury found Zachary Stewart negligent for failing to see this motorcycle. There was plenty of evidence in the case that, put on mostly by the co-defendant, criticizing the manner and the angle in which Zachary Stewart made his left turn at the time of the accident. There was a jury instruction submitted, IPI 60.01, a violation of Illinois traffic statute, that describes how you're supposed to make a correct left turn. It's almost incomprehensible, but I think what it says is you're supposed to make about a 90 degree turn, and there was a big deal made that maybe Zach wasn't making that 90 degree turn, but the plaintiff's own reconstruction expert testified that he had no criticism of how Zach made the turn, and that, in his opinion, it did not contribute to causing the accident. So I think it's wrong for the judge to seize upon and assume that the reason the jury found Zach negligent was because he didn't see the motorcycle. They may have thought that he technically violated that motor vehicle statute, that he didn't make a picture-perfect left-hand turn, as is required. So I said a few moments ago that the judge violated or grossly misapplied the PEDRAC standard in two egregious ways. One was that he didn't consider all the evidence, and two, he very obviously did not view the evidence in a light most favorable to Zachary Stewart. And now I have to talk about the evidence in this case. I believe that if you review all the evidence, the evidence was overwhelming, that Erickson was both negligent and a sole proximate cause of this accident. The jury heard the evidence. They know what was going on. And the record documents the following when viewed in the light most favorable to Zachary Stewart. Zachary Stewart testified that on the evening of the accident, he was operating his father's pickup truck. He was westbound on Hononegah Road. It was dark. He had his headlights on low beam. He intended on turning left on the Valley Forge Trail. There was also a recreational path on the north side of Hononegah Road, which ran parallel to Hononegah Road. There were no vehicles ahead or behind his vehicle. When he was about one and a half blocks from the intersection, he activated his left turn signal. He saw two fixed headlights coming toward him. And based on all the other evidence in the case, those two fixed headlights were the Jeep being operated by Travis Magnus, in which his wife, Heather, was a passenger. Both Travis and Heather Magnus testified by way of videotape, evidence depositions in this case. But he saw those two fixed headlights. Now, he was a block and a half away, and they were far enough away where he had plenty of time to make his left turn. His focus then shifts to the recreational path, because he knows that there's people. As soon as he turns left off the road, he's crossing this recreational path. And he knows from past experience, because his parents live in that subdivision, and he makes that left turn often, that you have to look out for, whether there's any pedestrians or bicyclists or whatever, coming either way on that bike path. And that he had almost completed his turn when he felt and heard this tremendous impact to the very rear of his pickup truck. Zachary testified, again, the trial court had to take the evidence of light most favorable to Zachary, that he was almost done with his turn, his truck was facing almost completely southbound now. When he felt this impact, he also testified that after the accident, he saw where the impact was to the very rear passenger side of the truck, between the rear tire and the back bumper. I think there are some photos of the truck that were submitted as an appendix. So, that's Zachary's testimony. Travis Magnus testified that he's operating a Jeep eastbound on Hononegah Road. As he goes over a bridge, over Highway 2, the end of that bridge is roughly three-quarters of a mile, that's all, before the intersection of the accident occurred, he notices two motorcycles behind him. At some point after he had crossed the bridge, one of the motorcycles, Stephen Erickson's, passed his vehicle at a high rate of speed. Did you say a quarter mile between the bridge and the accident? Three-quarter mile. Three-quarter, thank you. Three-quarter mile. He said the two motorcycles were moving pretty fast as they approached behind him, and then after they crossed, the first motorcycle passed his vehicle like it was standing still. The motorcycle then accelerated even faster and disappeared out of sight, and then not very long at all thereafter, he hears the boom of the crash. Speed limit at the scene of the accident, speed limit's 40? The speed limit is 40 miles an hour. It changes about a half a mile from 30 to 40, about a half a mile. So, over the bridge, is that 30? 30, right. So, where the person, where the motorcycle passed was 30? Yes. Well, if, yes it would be, because there's testimony in the case that the speed limit change for the direction the motorcycle was going goes from 30 to 40 about a half a mile from the intersection. So, Heather Magnus, well, after Travis came around what he said was a curve, out of the scene he saw two pedestrians in the roadway, the motorcycle in the roadway, and he saw Zach's pickup truck southbound on Valley Forge Trail. Heather Magnus, his wife, passenger of the jeep, said that the motorcycle passed the jeep going extremely fast, that it went even faster after passing their vehicle, that she gave a police statement that the motorcycle, quote, flew by, end quote, them at a, quote, high rate of speed, end quote. She later gave another statement that the motorcycle was going 50 to 60 miles an hour, and it disappeared from view, quote, quickly, end quote, and, quote, in a matter of seconds, period, end quote. Robert Wozniak, an accident reconstructionist and a mechanical engineer retained as an expert by the plaintiffs, testified that he inspected both the scene and the vehicles involved in the accident. He described the location, the damage to the pickup truck on the rear passenger side. He found out that as a result of the impact on this motorcycle, the entire box of the pickup truck was torn off its bolts and rotated on the frame. In his opinion, the motorcycle was traveling between 52 and 60 miles an hour at the time the tires began to leave the skid mark. He said it had to have been going even faster, but there's no way to measure speed until you actually have the physical evidence of a skid mark. So for the time the motorcycle was slowing down until it starts leaving the skid mark, he couldn't give an opinion as to that speed, but it was at least 52 to 60 miles an hour at the point the skid mark started. This is in a residential neighborhood, dark at night. He also was of the opinion that the motorcycle was still going 30 to 37 miles an hour after leaving 98 feet of skid marks, and it was still going 25 to 28 miles an hour after the impact, that Erickson had a total of 174 to 186 feet to avoid the accident, and that had the motorcycle been traveling at the 40-mile-an-hour speed limit, this is the plaintiff's expert, had the motorcycle been traveling at the 40-mile-an-hour speed limit, the accident would not only have not occurred, Erickson would even have had to hit his brakes and the accident would not have occurred. The evidence was overwhelming that Erickson's negligence was the sole proximate cause of this accident. Zach's pickup truck had almost completed its turn. He was no longer an immediate hazard when he made the turn. Boy. Didn't one witness, and I don't recall which, I'm thinking it might have been Wozniak, but didn't one witness say that there was also room in the lane that the motorcycle was in that he could have actually passed around, if he was in control of the bike, he could have passed around the end of the pickup truck? The same expert witness, Robert Wozniak, said there was room for Erickson to avoid the accident without even leaving his lane of traffic, and he had the entire oncoming lane to avoid this accident. Erickson testified, though, that he didn't want to go into the oncoming lane because he thought other cars were coming, right? He was the only one. But again, when the court is supposed to view the evidence in the light of most federal and non-member party, Zach Stewart was unequivocal that there were no vehicles behind him as he approached the intersection. I am out of time, Your Honor. I was going to cite some case law, but I'm out of time. You're out of time, Your Honor. I think you have five minutes for rebuttal. All right. Thank you. Mr. Greenwell. Thank you, Your Honor. Your response to Mr. Stewart's case? My response to the Zachary Stewart appeal? Yes, Your Honor. First of all, Judge Prochaska did not presume that the jury found improper type of turn. What Judge Prochaska found is that as a matter of law, Mr. Stewart was guilty of failing to maintain an adequate lookout because he did not see the clearly visible motorcycle approaching in the opposite lane of travel. And Judge also held that because of that, as a matter of law, Mr. Stewart was guilty of the failure to yield the right-of-way to that approaching vehicle. That approaching vehicle was only somewhere between 100 and 200 feet away when Mr. Stewart began to make his turn. How can a judge find that as a matter of law after a jury trial when the cases tell us that when we have evidence, especially conflicting evidence, as to speed, distance, right-of-way, expert witnesses are testifying, we're evaluating credibility of experts, circumstantial evidence, when all those things are factored together, how can a judge, as a matter of law, say that this was a proximate cause? Well, the judge can say it's a matter of law where the overwhelming evidence is that Mr. Stewart negligence was a cause of the accident. And I think if we look at causation and you look at Mr. Stewart's actions, that's what we need to zero in on. The evidence clearly, overwhelmingly, and without contradiction established that but for the negligence of the defendant Stewart in driving into and being in the eastbound lane of trial of the defendant Erickson, this accident would not have happened. Yes, Mr. Erickson was negligent, but his negligence does not excuse Mr. Stewart of failing to yield the right-of-way or failing to ensure that it's safe to make a turn when he's about to make a turn and cross into a lane of travel of another vehicle. So every time someone turns left, if they get hit, they're guilty? It's a strict liability offense? No, it's not strict liability. In this instance, if we look at the facts that existed, he began making his turn left when the other vehicle was 180 to 200 feet away, less than a 60-yard distance. And he turned because he didn't see that vehicle and he had well over half a mile and more, three-quarters of a mile. It's a straight shot. Whether the motorcycle was an immediate hazard? The motorcycle was an immediate hazard. No, whether it was or whether it was not, is that not a question of fact for the jury? No. It's not a question? Under these facts, there was no question but that the motorcycle was an immediate hazard. This isn't the situation of the… Did we ask to direct a verdict at the close of the evidence? Yes. Yes. And that was denied? Denied, yes. Why was it denied? Why did the court deny that? It did say it. It just said, question of fact, denied. Well, if it was a question of fact then, why is it not a question of fact now? I disagree with the court. I believe it was not a question of fact. I believe that as a matter of law, both defendants were negligent and both defendants' negligence were a cause of the accident. The court found the jury's verdict to be inconsistent. How are the court's verdicts not inconsistent where, on one hand, the court is saying, I'm not directing a verdict in your favor based upon these facts, but then when the jury returns a verdict that apparently he disagreed with, he directs a verdict. That's inconsistent to me. Maybe I'm wrong. Well, because trial courts will often not grant directed verdicts. And hope that the jury reaches the verdict. And as the judge said in this instance, they did get it. There is no question but that Stewart did see what was clearly in sight. There's no question that when he turned, it wasn't safe to turn. Counsel talks about if he should have been only going 40 miles an hour, they would have missed. Well, that theoretical testimony was, and that's not the facts of this case. He wasn't going 40 miles an hour. But that theoretical testimony was they would have missed the point of impact by three-tenths, seven-tenths of a second. A blink of an eye, they would have missed. They didn't say that Stewart would have been out of the intersection, out of the lane, out of the eastbound lane. He was still in the eastbound lane. And they also tried to excuse it and say, oh, well, there was still six feet to the left when the impact occurred. Six feet open lane in that eastbound lane when the impact occurred. But at the time that Erickson had to make a decision, Stewart was just beginning to enter the lane. And that's when he had to make a decision. Do I try to go around it or do I try to stop? He made the decision to attempt to try to stop his vehicle. And it may not have been the best decision. But as I pointed out in my brief, the law is clear that where the hazard is created by the car invading the other driver's lane, the fact that the person who's in his proper lane makes a poor decision to avoid that invading car does not exculpate the person who invaded the lane. The situation we have here is, again, it was Mr. Stewart that made a left turn and invaded the lane and was in that eastbound lane. Not his lane, but the other driver's lane at the time of this impact. It sounds like facts that are fairly similar to this Bogotairu case. Do you want to? No, not at all. Yes, I'll be happy to tell you more about that. In Bogotairu, Bogotairu was driving a Volkswagen northbound on Wells, south of Lake Street, with his passenger, Thier. The jury returned a verdict in the defense's favor, and by special interrogatory finding, Bogotairu was contributorily negligent. The court held that the evidence could be interpreted to support the verdict because the jury could consider the visible condition of the street, the elevated L tracks over it, and the girdles lining it, obscuring the cars approaching from the south a half block away. What the court in Bogotairu said is that this presented evidence that Bogotairu wasn't even negligent. Not caused, that he wasn't even negligent. I mean, that the driver was not even negligent. The court, though, in this case, is really supportive of us. The court discussed the principal case relied upon by the plaintiffs, Payne v. Kingsley, and agreed that it is well settled that one may not look with an unseeing eye and be absolved of all the charge of negligence by asserting that he maintained a continuous lookout, yet failed to see that which he clearly could have seen. And the court went on to discuss the cases that Payne was based upon and said, we don't, in this case, have a clear view. We've got the L. We've got all the steel girders from the L. But in our case here, we have, as the exhibits attached to my appendix show, we have a straight shot for three quarters of a mile. We have a situation where Mr. Stewart admitted seeing the Jeep that was traveling behind the motorcycle. We have a situation where the motorcycle has got three headlights on. There's nothing. Everybody agreed there was nothing that impaired Stewart's view of that motorcycle. Yet he simply did not recognize that it was present. That was a failure to maintain a lookout. Borgentreff involved a situation where, because of the L and all the girders that support that L on Wall Street, I'm sure you've been there. I've been there. There was a lot to obstruct the view. And the court in Borgentreff said the jury was entitled to determine that he was not negligent with respect to not seeing that vehicle. But in our case, we have no such situation. We have that motorcycle. Didn't the court also in that case look at the fact that the accident was way in the back of the vehicle that was struck? Excuse me? Didn't the court also look at the fact that the damage to the vehicle was way in the back of the vehicle that was struck to show that perhaps that was not a proximate cause because when the person made the turn that it was not an immediate hazard? No, they didn't really discuss the proximate cause in any detail. My recollection is what they said. Well, it says here, such inferences are reasonable and certainly support the verdict that Bogotairu did not have the right-of-way and that the defendant's actions did not proximately cause the accident. I mean, that's what it said. And they did look at the fact that there was damage to the back of the vehicle. In a situation similar to this where the defendant testified that he didn't see the car at all and didn't realize the car was there until it hit the back of his car. Well, but the court was saying exactly that, that there was evidence pointing that he did not yield the right-of-way because the car wasn't visible because of the L tracks. In this situation, the motorcycle clearly was visible. The motorcycle clearly could have been seen. The vehicle, the steward even admitted seeing the vehicle that was behind the motorcycle. There was absolutely no reason given. And as I pointed out, where a person invades the lane of travel, of oncoming traffic, he's in his wrong lane. And he offers no evidence to show why he, that wasn't negligent. He is, as a matter of law, negligent. And I've cited those cases and discussed those cases in my brief. So here he is. He is in the lane that he's not supposed to be in. He's making a turn with a motorcycle bearing down upon him, a motorcycle in the correct lane. He never sees the motorcycle. He doesn't yield the right-of-way because he never sees the motorcycle. He's not in the proper lane. The motorcycle is at least in its proper lane. And this accident occurs. This accident, but for the negligence of Zachary Stewart, would never have happened. But for the negligence of Erickson, it never would have happened. That's true, too. But as this Court's own opinion in Turner v. Roessner said, but for is the proper method of determining causation when both drivers are negligent. Turner v. Roessner, I've cited it in my brief, it's a decision from the Second District Court of Appeals, from this Court. Realistically, that's a strict liability offense, then, because if a person is taking a left turn and is struck by an oncoming car, but for him turning, the accident never would have happened, so there would always then be an approximate cause of the accident. No, because you're leaving on a point, a very important point. But for his negligence in turning, the accident would not have occurred. Simply because he turns doesn't mean anything. So you're saying that regardless of the speed of the oncoming vehicle, if I make a left-hand turn in front of that vehicle and he strikes me, that I'm negligent? I'm not saying that. That's essentially what you're saying, because there's some variability here in the speed of that oncoming vehicle. Anywhere from it was going pretty fast, anywhere from it was 43 to 49, or 52 to 60, in a 40-mile, between 30 and 40-mile zone. 40-mile zone. It was 40 then, but it was 30 when he passed. Three-quarters of a mile back. That variability is the big factor there that makes it a question of fact, isn't it? No, no. And for this reason. In looking out, you have a duty, and I've cited the cases in my brief, you have a duty to make sure, to observe whether or not it is safe. You have a duty to observe whether or not cars coming towards you are operating in such a fashion that you can safely make a turn. Just because they're speeding does not exonerate you. The cases are legion on that. Just because someone else is negligent does not exonerate you, who is creating the hazardous condition, i.e., being in the other driver's lane of travel. So, in this instance, we have a failure to maintain that lookout, to maintain that adequate lookout before he makes his turn. Had he exercised his duty to maintain an adequate lookout and seen that motorcycle less than 60 yards away approaching him, he then would have had to say, Is he speeding or not? Can I observe his approaching me, the speed that he's approaching me, make that turn? And if I'm not sure, and if I'm not sure, then I haven't satisfied my duty to make sure that I can make that turn safely. And there's no question he could not make that turn safely. Because he had the accident. You're saying the issue is negligence, and if I'm negligent in any way in making that turn, then I have a proximate cause to that accident. If the reason I am blocking that lane is because of my negligence, that negligence is a cause for the accident. Then why did you agree to a special interrogatory that not only asked about negligence, but also asked about proximate cause? I'm just saying, why agree to that? Because what you're saying is, if you find him negligent and this accident happened, that's it, game's over. Then why agree to an interrogatory that could kink this thing up? Well, for various reasons. Number one, if I hadn't asked for the interrogatory, then perhaps, because this court concluded like the court did in Bartlett trial, that the jury could have found that he wasn't negligent. And there, the jury did find that he was negligent. I believe that in this situation, that the use of a special interrogatory was a very good procedure to follow, and a good strategy to follow. And again... Did you demand a jury in this case? Excuse me? Did you demand a jury in this case? No. The other side demanded the jury? Yes. Thank you, counsel. Your time is up. Do you want me to discuss the rebuttal to the other case, or am I... Well, you're out of time, so sorry we took up your time, but Mr. Goff has a chance to rebutt on his case for five minutes. Five minutes? Mr. Goff has a chance. Your time is up. Oh, my time is up. Thank you. Thank you. Mr. Goff, you may proceed. Thank you. Once again, counsel just asked this court to zero in on Stewart's testimony that he did not see the motorcycle. That is the same... That's not the pederic standard. That's the same, with all due respect, the same mistake that the jury made. That the trial court made, zeroing in on one sliver of testimony and not following the pederic standard to view all the evidence, and all the evidence in the light most favorable to Stewart. Bogutru, the distinction counsel is trying to make is a distinction without a difference. Bogutru, the court there did state that the left turn vehicle that was struck in the very rear may have been negligent, but that negligence, there was enough evidence that that negligence may have not been a proximate cause of the accident. The plaintiffs obviously have the burden of proving not only negligence, but proximate cause. This jury sat through six days of testimony, observed the demeanor of the witnesses, and concluded that if Zach Stewart may have been somehow negligent for something he did, that negligence wasn't the proximate cause of the accident. The sole proximate cause of the accident was the negligence of Steve Erickson, who was driving at a high rate of speed on a motorcycle in a residential neighborhood at night in the dark. And also, by his own admission, he first saw Zach's approaching vehicle when his own motorcycle was a quarter to a half mile from the intersection. And he never slowed down. He kept going the same speed. And the jury concluded that that was the proximate cause of the accident, that negligence. Do you find it to make a difference at all that Bogutru was a contributory negligence case? I don't believe so, because the important part of Bogutru is that under those facts, if Bogutru was negligent, it wasn't the proximate cause of the accident, because his or her vehicle had almost completed the left turn before it was hit. We also cited the Guy case. Counsel didn't address that. That is a similar case to Bogutru, although it wasn't involving a left turn. It was a vehicle, a defendant's vehicle was crossing a preferential roadway, had almost made it across when it got hit in the very rear end. Same result in that case, and that hasn't been distinguished. In that case, in Guy, the appellate court reasoned that the plaintiff had the opportunity to avoid the collision by decreasing speed, sounding his horn, changing lanes. Erickson had all those opportunities in this case. Could have decreased speed, could have went to the other lane to avoid the accident. I think what's most important about Guy is that a driver on a preferential highway does not have a quote, absolute or unqualified right-of-way that can be asserted regardless of circumstances, distance, or speed. And that's what we have here in this case. The jury could have concluded from the evidence, if you view it in the light most favorable to Stewart, that Erickson should have decreased the high rate of speed when he first saw the pickup truck from a quarter to a half mile away. He should have complied with the 40-mile-an-hour speed limit. He could have avoided the accident by going around. I don't know how the trial court could say it looked at the evidence in the light most favorable to Zach Stewart and took this verdict away from him. It should not have been done. It was a misapplication of the PEDRIC standard. I quoted in the brief what our Supreme Court said in Ney v. Yellow Cab Company, questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasizes the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue, and to withdraw such questions from the jury is to usurp its function. And that's what happened here. On behalf of Zachary Stewart, we're asking his appellate court to vacate the second trial judgment against him and to reinstate the initial judgment that was entered on the verdict after the first trial. Thank you. I'd like to thank both attorneys for their arguments today. The case will be taken under advisement. We will take a short recess.